# EXHIBIT H

1
2
3
4
5
6

**SUPERIOR COURT OF WASHINGTON FOR KING COUNTY**

7

PATRICK WILLS, PERSONAL
REPRESENTATIVE OF THE ESTATE OF
AIDEN WILLS; SHERRY SHAFFER
PERSONAL REPRESENTATIVE OF THE
ESTATE OF LOGAN SHAFFER; WHITNEY
STETTLER, a single person; CHRISTOPHER
GUNNELL, PERSONAL REPRESENTATIVE
OF THE ESTATE OF IAN GUNNELL; all on
behalf of themselves and all others similarly
situated,

No.  19-2-31648-9 SEA

**CLASS ACTION COMPLAINT**

8
9
10
11
12

Plaintiffs,

13

v.

14

SEATTLE CHILDREN'S HOSPITAL, a non-
profit Washington Corporation,

15
16

Defendant.

17

Plaintiffs allege:

18

## I.      INTRODUCTION

19

1.1     For decades Defendant Seattle Children's Hospital has been one of the most

20

revered pediatric medical facilities in the country.

21

1.2     In November 2019, Defendant shocked the public by admitting its premises at

22

4800 Sandpoint Way Northeast, Seattle, Washington, had been contaminated with *Aspergillus*

23

mold since 2001 which sickened and caused the death of numerous child patients.

24

CLASS ACTION COMPLAINT - 1

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

1.3     By at least 2005, Defendant knew the transmission of *Aspergillus* into its premises could be related to its air-handling system.  At that time in order to win a lawsuit brought by the Patnode family, Defendant hired lawyers and experts in an attempt to disprove that fact.

1.4     During the course of that lawsuit troubling information surfaced regarding the Defendant's failure to maintain and staff its air-handling systems.  In 2008, Defendant settled the lawsuit and insisted on confidentiality. In the following years the Defendant kept a deadly secret: *Aspergillus* continued to contaminate Seattle Children's Hospital.  Defendant engaged in a cover-up designed to reassure its patients, doctors, nurses, and the public that its premises were safe, when in fact they were not.

1.5     This Class Action lawsuit is brought on behalf of the child patients of Defendant who became infected by *Aspergillus* mold after they were hospitalized between 2001 and the present time.

## II.     PARTIES

2.1     Plaintiff Class Representative Patrick Wills, Personal Representative, brings this action on behalf of the estate of Aiden Wills, a three-year-old child patient of Defendant who was hospitalized from August 2008 until his death in March 2009, as well as the Parental claims of Patrick Wills, residing in Pandora, Ohio and Colleen White, residing in New Rochelle, New York.

2.2     Plaintiff Class Representative Sherry Shaffer brings this action on behalf of the estate of Logan Shaffer, an infant child patient of Defendant who was hospitalized in February 2005, as well as the Parental claims of Jim and Sherry Shaffer residing in, Auburn, Washington.

CLASS ACTION COMPLAINT - 2

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

2.3     Plaintiff Class Representative Whitney Stettler, was 17 years of age when she was hospitalized.  She is now an adult residing in Battleground, Washington.

2.4     Plaintiff Class Representative Christopher Gunnell, Personal Representative, brings this action on behalf of the estate of Ian Gunnell, an eleven-year-old child patient of Defendant who was hospitalized from August 2008 until his death on March 2009, as well as the Parental claims of Ian and Tanya Gunnell, residing in Lewiston, Idaho.

2.5     The Plaintiff Class Representatives bring this healthcare negligence and premises liability Class Action against Defendant.  Defendant's facilities located at 4800 Sandpoint Way Northeast, Seattle, Washington, should have been, but were not, reasonably safe for the uses intended.  The Defendant negligently maintained and tested its facilities, resulting in the transmission of *Aspergillus* mold spores to hospitalized child patients.

2.6     Defendant Seattle Children's Hospital is a nonprofit corporation organized under the laws of the State of Washington authorized to do business in the State of Washington. Defendant is a "healthcare provider" within the meaning of RCW 7.70 and was duly authorized to provide healthcare services to Plaintiffs and each class member. There existed a fiduciary health care provider-patient relationship between the parties.

2.7     Defendant provided to Plaintiff and each Class member medical care, treatment, and housing within its facilities.

2.8     Defendant through its agents, employees, and contractors, acted at all relevant times on behalf of Defendant and within the scope of their employment or agency (whether actual or ostensible).

## III.     DATE OF OCCURRENCE

3.1     The care in question occurred from the time that the *Aspergillus* mold entered into

CLASS ACTION COMPLAINT - 3

the Defendant's premises to the present date.  By admission of Defendant's Chief Executive

Officer Jeff Sperring, MD, that date is 2001 to the present time.

3.2     By August 2000, the Defendant knew or should have known of the dangerous

condition as a result of internal communication outlining ongoing and systemic problems with

the maintenance of the air-handling system.

3.3     During 2002 and 2003, Defendant knew of the numerous problems with the air-

handling system and risk to patient population due to internal communications and concerns

raised by a professional engineering consultant, including lack of formal maintenance program,

water leaks, plugged drains, standing water, plugged intake screens, live and dead birds in fan

shafts, leaking coils, overall filthy condition of all air handling units, lack of organized blue

prints of HVAC system, under-qualified and under-staffed Building and Engineering

Department,  misallocation of monies from the Building and Engineering Department and failure

to test air handling units to determine if operating as designed.

3.4     In 2005, Eugene and Clarissa Patnode brought a lawsuit on behalf of their child.

The litigation exposed the direct link between inadequate maintenance of the air-handling system

and transmission of *Aspergillus* mold into Children's Hospital.

3.5     In 2008, Defendant settled the Patnode case on condition of confidentiality.  By

invoking secrecy, Defendant took active steps to hide from the public the existence of

*Aspergillus* mold as spread throughout the hospital's air-handling system.

3.6     Based upon the evidence discovered in the Patnode case, Defendant knew or

should have known by at least August 2000 that its negligent failure to provide safe premises

directly caused the transmission of *Aspergillus* to its vulnerable child patients.

3.7     Between 2000 and the present time, the Defendant did not notify the public, its

CLASS ACTION COMPLAINT - 4

doctors, nurses, or its patients or their parents that there were problems with the maintenance of its air-handling system. Even when hospitalized child patients became sickened by *Aspergillus*, Defendant concealed its culpability.

3.8     The "discovery rule" pertaining to the statute of limitations applies.

3.9     In 2019, after seven infections and one death were connected to the latest outbreak of *Aspergillus* as transmitted by Defendant's air-handling system, Defendant looked back at prior cases and identified seven more illnesses and five deaths between 2001 and 2014. Only then did Defendant admit that *Aspergillus* exposure was evident at the hospital these past 18 years.

## IV.     JURISDICTION AND VENUE

4.1     The Superior Court of King County, State of Washington, has subject matter jurisdiction over this action pursuant to RCW 2.08.010.

4.2     Jurisdiction and venue are proper in and for the Superior Court of Washington for King County Seattle Division because the incident occurred at Defendant's place of business in Seattle, King County, Washington.

## V.     CLASS ACTION ALLEGATIONS

5.1     **Class Definition:** Plaintiff brings this Class action pursuant to Washington CR 23(b)(3) on behalf of a Class defined as follows:

> All former admitted child patients of Defendant who were treated in its premises and affiliated areas starting in 2001 to the present who then contracted any version of *Aspergillus* mold-related illness caused by exposure within Defendant's premises, where such illness resulted in personal injury including death and loss of consortium to the parents.

CLASS ACTION COMPLAINT - 5

5.2     **Numerosity:** The hospital has not yet attempted to identify all child patients who were exposed to *Aspergillus* and contracted any of the conditions described in paragraphs 6.3.a-b below.  Upon information and belief, the Class is so numerous that joinder of all members is impracticable. The disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

5.3     **Commonality:** There are questions of law and fact which are common to the Class, including, but not limited to:

a.      Whether Defendant breached its duty to comply with the standard of care of a pediatric hospital;

b.      Whether Defendant exercised the requisite degree of skill, care and learning expected of a reasonably prudent hospital/healthcare provider;

c.      Whether Defendant fell below its professional standard of care by failing to provide a safe environment within its premises and related facilities;

d.      Whether Defendant failed to obtain informed consent that surgery would not occur in a safe environment and included the risk of contamination by *Aspergillus* mold which could lead to further injury, including death;

e.      Whether Defendant failed to reasonably maintain its air-handling system;

f.      Whether Defendant reasonably monitored its premises and related facilities to ensure that a safe environment existed;

g.      Whether Defendant had a duty to take reasonably prudent measures to prevent *Aspergillus* mold from infecting Plaintiff and each Class member in the Defendant's premises;

h.      Whether Defendant failed to exercise reasonable care to protect its child patient business invitees from injury;

i.      Whether Defendant failed to take reasonable precautions to eliminate the risk of

CLASS ACTION COMPLAINT - 6

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

*Aspergillus* transmission from its air-handling system to its child patient business;

j.     Whether Defendant owed a duty of care to its child patient business invitees, including Plaintiff and each Class member, which required it to inspect for dangerous conditions, followed by such repair, safeguards, or warnings as may be reasonably necessary under the circumstances;

k.     Whether Defendant violated WAC 246-320;

l.     Whether Defendant concealed the existence of chronic *Aspergillus* contamination in its premises from the public between 2000 and 2019;

m.     Whether Defendant violated the CPA; and

n.     The nature and extent of Class-wide injury and the measure of compensation for such injury.

5.4     **Typicality.**   Plaintiffs' claims are typical of the claims of other members of the Class and Plaintiffs are not subject to any atypical claims or defenses. Defendant did not prevent the transmission of *Aspergillus* into its premises.  Plaintiffs were ill when brought to Defendant's hospital, the premises were contaminated, and as a result the patients became sickened by *Aspergillus*.  Defendant failed to advise the children's parents that the premises were unsafe and later did not admit to them that the *Aspergillus* infection was caused by Defendant's own negligence.  Plaintiffs' claims like those of the Class, arise out of the same common course of conduct by Defendant directed toward Plaintiffs and the Class and are based on the same legal and remedial theories.

5.5     **Adequacy:**  Plaintiffs will fairly and adequately represent the Class, as they are committed to prosecuting this action, have no conflicts of interest, and have retained competent counsel who are experienced civil trial lawyers with recent significant experience in complex and Class action litigation and trial, including tort litigation.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial

CLASS ACTION COMPLAINT - 7

resources to do so.  Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Class.

5.6  **Predominance:** For years the Defendant has failed to ensure that its premises are a safe environment for its child patients.  Even when challenged directly on the issue between 2005 and 2008, Defendant fought the charges and settled the matter confidentially.  The common issues arising from this conduct that affect Plaintiffs and members of the Class predominate over any individualized issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

5.7  **Superiority.**  Plaintiffs and Class members have suffered and will continue to suffer harm and damages as a result of Defendant's negligence.  Absent a Class action, most Class members likely would find the cost of litigating their claims prohibitive.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, and provides a forum for all claims.  There will be no significant difficulty in the management of this case as a Class action. The identity of each Class member is readily identifiable from Defendant's own records.  In fact, unless this matter proceeds as a Class action, many children and young people who were injured by exposure to *Aspergillus* at Defendant's hospital may not otherwise learn how or why they were injured.

## VI.    BACKGROUND



STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

6.1     Defendant's admirable mission is to "provide hope, care and cures to help every child live the healthiest and most fulfilling life possible."  For over 100 years, Defendant has been known to "deliver superior patient care, advance new discoveries and treatments through pediatric research and serve as the pediatric and adolescent academic medical center for Washington, Alaska, Montana and Idaho – the largest region of any children's hospital in the country."  In 2019, *U.S. News & World Report* named Seattle Children's to its Honor Roll of the 10 best children's hospitals in the country. The Honor Roll designates excellence across a range of pediatric specialties.

6.2     Included within the Defendant's responsibilities is the requirement that it ensure that its premises are safe for its child patients.  This includes ensuring that its premises remain a sterile environment, including, but not limited to, adequately maintaining its air-handling systems, and testing its premises and affiliated areas for the presence of *Aspergillus* mold spores.



*Demonstrative Photo by: Center for Disease Control*

6.3     *Aspergillus* is a common mold.  People with lung disease or weakened immune systems – especially organ or stem cell transplant patients – are at higher risk of developing

CLASS ACTION COMPLAINT - 9

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

aspergillosis.   The condition can appear as an allergic reaction, but in more serious cases causes infections in the lungs and other organs.   According to the CDC:

    a.    Azole-Resistant *Aspergillus fumigatus:* Occurs when one species of *Aspergillus, A. fumigatus,* becomes resistant to certain medicines used to treat it. Patients with resistant infections might not get better with treatment.

    b.    Aspergilloma: Occurs when a ball of *Aspergillus* grows in the lungs or sinuses, but usually does not spread to other parts of the body. Aspergilloma is also called a "fungus ball."

    c.    Chronic pulmonary aspergillosis: Occurs when *Aspergillus* infection causes cavities in the lungs, and can be a long-term (3 months or more) condition. One or more fungal balls (aspergillomas) may also be present in the lungs.



Figure 2: Primary pulmonary Aspergillosis presenting as endoluminal gelatinous blobs causing lung collapse.

*Demonstrative Photo from*
*Journal of Pulmonary and Respiratory Infection (2014)*

    d.    Invasive aspergillosis: Occurs when *Aspergillus* causes a serious infection, and usually affects people who have weakened immune systems, such as people who have had an organ transplant or a stem cell transplant. Invasive aspergillosis most commonly affects the lungs, but it can also spread to other parts of the body.

CLASS ACTION COMPLAINT - 10

e.   Cutaneous (skin) aspergillosis: Occurs when *Aspergillus* enters the body through a break in the skin (for example, after surgery or a burn wound) and causes infection, usually in people who have weakened immune systems. Cutaneous aspergillosis can also occur if invasive aspergillosis spreads to the skin from somewhere else in the body, such as the lungs.

6.4   In December 2002, 12 year old Jane Doe Patnode had a brain tumor surgically removed at Defendant's hospital.  The child survived the tumor removal, but developed aspergillosis in her brain and spine which rendered her permanently disabled.  The family sued Defendant in 2005.  Two declarations summarize the nature of Defendant's failures regarding its air-handling systems:

a.   Margaret Brown, had a master's degree in civil engineering and construction management, and had been a Navy civil engineer for 20 years.  She had previously been a project manager at Fred Hutchison when they built the Seattle Cancer Care Alliance, and was Director of Engineering at Harborview Medical Center.  From October 2002 to March 2003, she was retained by Defendant as a consultant for the Building & Engineering Department (B&E).  Ms. Brown stated under oath on August 31, 2007:

i.   She was advised by Defendant's infection control staff that *Aspergillus* was a concern for the B&E Department.

ii.   The operating and maintenance manuals for the air-handling system had been missing for approximately one year.

iii.   The air-handling system was only repaired when it would breakdown.

iv.   Preventative maintenance of the air-handling system was not occurring.

CLASS ACTION COMPLAINT - 11

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

v.      The air-intake systems were in poor condition and it appeared

maintenance had not been performed for many years. Dead birds along

with copious other debris were lodged in the screens. Air-handling unit

water pans were filled with slimy water.

vi.     B&E employees had no air-handling education.

vii.    Overall Defendant's B&E Department did not have employees with the

skill and knowledge of other B&E staff she had worked with in the past.

viii.   She had grave concerns about how the hospital's critical care systems

impacted Defendant's patient populations.

ix.     When she brought and explained these concerns to Defendant, it abruptly

terminated her services.

b.      Defendant hired Kenneth Johnson as an engineer in the B&E Department in April

1999.  He received a promotion to Lead Engineer, but left in September 2003.

Mr. Johnson stated under oath that during his time there:

i.      All of the air-handling units were in a filthy condition.  Mold accumulated

around fan coils and drain pans.  Air intake screens were plugged with

debris, including dead and live birds and bird droppings.

ii.     The only preventative maintenance performed was limited to changing

filters on the air handling units.

iii.    It would have taken several years without maintenance for the system to

deteriorate to this state.

iv.     Most of the time the air-handling units and fans had some form of water

leak.  This is because the system was "rotting out."

CLASS ACTION COMPLAINT - 12

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

v.     The B&E Department tried to put temporary patches on the problems.

vi.    The air-handling system was not tested.

vii.   The maintenance department was understaffed and needed additional funding to complete maintenance, make repairs, and provide for a computerized maintenance management system.

viii.  Defendant's B&E Manager repeatedly expressed concerns in writing by email to Defendant.

6.5     In August 2008, the Patnode lawsuit ended in a secret settlement.  The Defendant did not advise the public that children taken for surgery at its Hospital had been or could be exposed to *Aspergillus* mold through its air-handling system.

6.6     Defendant failed to take adequate steps to address the long-standing *Aspergillus* contamination spread through its air-handling system, including, but not limited to, negligence in the maintenance of that system and negligence in testing its premises for the presence of mold spores.

**Class representative Estate of Logan Shaffer**



CLASS ACTION COMPLAINT - 13

6.7     On February 5, 2005, Logan Shaffer was born with only half a heart.  Physicians advised that surgery could be performed that would allow the right side to function as a whole heart.  Logan's parents chose Defendant over Stanford University Hospital.  Logan experienced a successful surgery on February 10, 2005.

6.8     Baby Logan recovered from surgery and went home.

6.9     During a later examination by a cardiologist, doctors discovered that Logan had suffered a heart aneurism caused by an *Aspergillus* infection.

6.10    Logan returned to Defendant's hospital in March 2005.  There, doctors found systematic bleeding throughout Logan's body.

6.11    Logan died on March 28, 2005.

6.12    Exposure to *Aspergillus* while in Defendant's premises directly caused Logan's pulmonary infection and death.

6.13    The doctors and nurses employed by Defendant who provided care to Logan did not know that Defendant's premises were unsafe and that transmission of Aspergillus was Defendant's fault.

6.14    Defendant failed to notify Logan's parents that the *Aspergillus* had been contracted directly from its facilities as the result of negligent maintenance of its air-handling system.

**Class Representative Estate of Aiden Wills**



CLASS ACTION COMPLAINT - 14

6.15   In August 2008, three-year-old Aiden Wills became a patient at Defendant's hospital.  He suffered from hemophagocytic lymphohistiocytosis, a rare disorder where the body makes too many immune cells.  He underwent bone marrow transplant.

6.16   In about January 2009, doctors performed bronchoaveolar lavage (a procedure where a bronchoscope is passed into the lungs).  He was then diagnosed with *Aspergillus* fungal infection.  At the time doctors explained that due to the *Aspergillus* infection:

> "…we are in a tougher spot than we have been.  In the past a fungal infection post-transplant was a fatal condition.  However, we do now have medications that can treat fungal infections.  The dilemma is that we must prioritize whether to treat the fungus of the VGHD most effectively.  If we treat the GVHD (Acute Graft versus Host Disease) most aggressively with a steroid burst and possibly additional medications, we put Aiden at greater risk for the spread of his fungal infection.  If we treat the fungus aggressively with immunosuppressants, then we risk a worsening of his GVHD.  At present we are choosing to treat the fungus most aggressively with voriconazole and micafungin.

6.17   By February 17, 2009, the *Aspergillis* was "unchanged."

6.18   Aiden died March 24, 2009.

6.19   Exposure to *Aspergillus* while in Defendant's premises directly caused Aiden's pulmonary infection and interfered with his treatment.

6.20   The doctors and nurses employed by Defendant who provided care to Aiden did not know that Defendant's premises were unsafe and that transmission of *Aspergillus* was Defendant's fault.

6.21   Although Defendant treated Aiden for the infection, it failed to notify his parents that the *Aspergillus* had been contracted directly from its facilities as the result of negligent maintenance of its air-handling system.

//        //

//        //

//        //

CLASS ACTION COMPLAINT - 15

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

**Class Representative Whitney Stettler**



6.22    In 2011, Plaintiff Whitney Stettler was a 17-year-old teenager living in Alaska when diagnosed with Leukemia.  She flew to Defendant's hospital for urgent care.  She underwent surgery in the operating room where a port (central venous line) was placed.  Through the port she received life-saving medication.  The goal was to stabilize Whitney so that she could receive a bone marrow transplant.

6.23    After the port placement, Whitney became ill in a manner not associated with Leukemia or its treatment.  Tests revealed the existence of *Aspergillus* mold in her blood. Whitney went into a coma and remained in-patient for the next month until her condition stabilized.

6.24    Exposure to *Aspergillus* while in Defendant's premises directly caused Whitney's pulmonary aspergillosis and interfered with her treatment.

6.25    The doctors and nurses employed by Defendant who provided care to Whitney did not know that Defendant's premises were unsafe and that transmission of Aspergillus was Defendant's fault.

CLASS ACTION COMPLAINT - 16

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

1

2

6.26    Although Defendant treated Whitney for the infection, it failed to notify her that the *Aspergillus* had been contracted directly from its facilities as the result of negligent maintenance of its air-handling system.

**Class representative Estate of Ian Gunnell**



6.27    In 2017, eleven year old Ian Gunnell had a previous diagnosis of blastic plasmacytoid dendritic cell neoplasm, a rare form of blood cell cancer.  He was admitted to Defendant's hospital for additional chemotherapy.  On August 30, 2017, he underwent surgery in the operating room where a port (central venous line) was placed.

6.28    Within a few weeks one of his eyes began to swell.  By September 15, 2017, uncertain of what was causing the eye symptoms, doctors began performing tests and attempted to treat the unknown infectious disease process which later was verified as *Aspergillus*.  Ian complained of pain, subconjunctival hemorrhage was noted, and his eye was swollen shut. Doctors performed surgery to debride (scrape away) black necrotic debris down to bleeding tissue.

6.29    Ian died February 15, 2019.

CLASS ACTION COMPLAINT - 17

6.30    Exposure to *Aspergillus* while in Defendant's premises directly caused Ian's severe eye infection and interfered with his cancer treatment.

6.31    The doctors and nurses employed by Defendant who provided care to Ian did not know that Defendant's premises were unsafe and that transmission of Aspergillus was Defendant's fault.

6.32    Although Defendant treated Ian for the infection, it failed to notify him that the *Aspergillus* had been contracted directly from its facilities as the result of negligent maintenance of its air-handling system.

6.33    In October 2017, State Department of Health inspectors cited Defendant for serious violations involving its failure to "implement and monitor an effective infection prevention program."

6.34    In June 2018, Defendant closed two of its premises and an equipment storage room for three days after detection of *Aspergillus*.

6.35    In May 2019, the Defendant discovered another *Aspergillus* infestation in the air-handling unit.  As a result, the Defendant closed all of its premises. State inspectors cited Defendant for failing to adequately maintain its air-handling units and exhaust fans.

6.36    Defendant claimed to be addressing the issues and reopened the premises on July 4, 2019.  Mark Del Beccaro, Defendant's Chief Medical Officer, informed investigators that the risk to patients was "incredibly low."

6.37    On November 10, 2019, an inspection revealed *Aspergillus* in three of Defendant's premises.  The Defendant closed these premises.

6.38    For a period of at least 19 years (2000 until July 4, 2019), Defendant failed to adequately maintain the safety of its premises due to negligent maintenance of its air-handling system, and negligent failure to adequately test for mold spores.

6.39    On July 4, 2019, Defendant began to test for mold spores at least once per week. Defendant is also in the process of replacing its air-handling system.

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

6.40    The Class Plaintiffs did not learn that there was a link between their *Aspergillus* infections and Defendant's hospital until November of 2019 when they heard through the media, Defendant's admission of responsibility for the unintended transmission of *Aspergillus* to child patients.

## V.    MEDICAL NEGLIGENCE

5.1    As a health care provider, Defendant owed to Plaintiffs and each Class member a duty to comply with the standard of care for one of the profession or Class to which it belongs.

5.2    Defendant owed a duty to Plaintiffs and each Class member to exercise the degree of skill, care, and learning expected of a reasonably prudent hospital in the State of Washington acting in the same or similar circumstances at the time of the care or treatment in question.

5.3    Defendant owed a duty to Plaintiffs and each Class member to take reasonably prudent measures to prevent *Aspergillus* from infecting Plaintiffs and each Class member in its premises.

5.4    Defendant violated WAC 284-320, including specifically 246-320-296, partially excerpted as follows:

**WAC 246-320-296 - Management of environment for care.**

The purpose of this section is to manage environmental hazards and risks, prevent accidents and injuries, and maintain safe conditions for patients, visitors, and staff.

(1) Hospitals must have an environment of care management plan that addresses safety, security, hazardous materials and waste, emergency preparedness, fire safety, medical equipment, utility systems and physical environment.
(2) The hospital must designate a person responsible to develop, implement, monitor, and follow-up on all aspects of the management plan.
(3) Safety. The hospital must establish and implement a plan to:
(a) Maintain a physical environment free of hazards;
(b) Reduce the risk of injury to patients, staff, and visitors;
(c) Investigate and report safety related incidents;
(d) Correct or take steps to avoid reoccurrence of the incidents in the future;

CLASS ACTION COMPLAINT - 19

(e) Develop and implement policies and procedures on safety related issues such as but not limited to physical hazards and injury prevention; and

…

(9) Utility systems. The hospital must establish and implement policies, procedures and a plan to:
(a) Maintain a safe and comfortable environment;
(b) Assess and minimize risks of utility system failures;
(c) Ensure operational reliability of utility systems;
(d) Investigate and evaluate utility systems problems, failures, or user errors and report incidents and corrective actions;
(e) Perform and document preventive maintenance; and
(f) Educate staff on utility management policies and procedures.
(10) Physical environment. The hospital must provide:
…
(c) Ventilation to:
(i) Prevent objectionable odors and/or excessive condensation; and
(ii) With air pressure relationships as designed and approved by the department when constructed and maintained within industry standard tolerances;
…

5.4    Defendant failed to take reasonably prudent measures to prevent *Aspergillus* from infecting Plaintiffs and each Class member in its premises.

5.5    Defendant's failures constitute a breach of the standard of care and negligence.

5.6    Defendant is independently liable under the doctrine of corporate negligence.

## VI.    PREMISES LIABILITY

6.1    As of at least 2000, Defendant had actual and constructive notice that its negligently maintained air-handling system could cause the transmission of *Aspergillus* mold into its premises.

6.2    Defendant failed to properly maintain its air-handling system, resulting in the contamination of its premises.

6.3    Plaintiffs and each Class member was a child patient business invitee.

6.4    Defendant failed to exercise reasonable care to protect its child patient business invitees, including Plaintiffs and each Class member, from injury.

CLASS ACTION COMPLAINT - 20

STRITMATTER KESSLER KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

6.5     Defendant failed to take reasonable precautions to eliminate the risk of *Aspergillus* transmission from its air-handling system to its child patient business invitees, including Plaintiffs and each Class member.

6.6     Plaintiffs and each Class member was a business invitee.

6.7     Defendant owed a duty of care to its child patient business invitees, including Plaintiffs and each Class member, that required it to inspect for dangerous conditions, followed by such repair, safeguards, or warnings as may be reasonably necessary for the Plaintiffs' and each Class member's protection under the circumstances.

## VII.   *RES IPSA LOQUITUR*

7.1     Plaintiffs assert *res ipsa loquitur's* inference of negligence because: a) the occurrence that caused Plaintiffs' and each Class member's injury would not ordinarily happen in the absence of negligence; the instrumentality of agency that caused Plaintiffs' and each Class member's injury was in the exclusive control of the Defendant and c) neither the Plaintiffs nor any Class member contributed to the occurrence.

7.2     Defendant's allowance of the transmission of *Aspergillus* mold through its air-handling systems into what should have been safe hospital premises is so palpably negligent that it may be inferred as a matter of law.

7.3     The general experience and observation of humankind teaches that the result of *Aspergillus* mold spread through a hospital's air-handling system which then enters into the body of a child patient is a result that would not be expected without negligence.

7.4     Proof by experts in the field, including the State Department of Health investigators and Defendant's own investigators, creates an inference that negligence caused the injuries.

CLASS ACTION COMPLAINT - 21

## VIII.   INFORMED CONSENT

8.1     Defendant failed to inform Plaintiffs or any Class member or their parents of material facts relating to their treatment, such failure resulted in injuries and damages, and such injuries and damages would not have occurred had they been fully informed and made aware of material facts relating to the treatment.

## IX.     CONSUMER PROTECTION ACT – RCW 19.86 et seq.

9.1     Defendant has engaged in unfair or deceptive acts or practices by engaging in the following courses of conduct:

   a.     Making material misrepresentations and omissions about the safety of its premises (in particular that it conforms to the standards required of a hospital facility) to the public, including its business invitees;

   b.     Collecting substantial compensation from its business invitees;

   c.     Injuring its child patient business invitees, but then not notifying them that the transmission of *Aspergillus* occurred due its unsafe premises; and

   d.     Covering up the nature and extent of the deficiencies related to maintenance of its air-handling system in order to avoid exposure to litigation, bad publicity, and damage to its otherwise stellar reputation.

9.2     Defendant's unfair and deceptive acts and practices repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the public, particularly since Defendant advertised itself as the pre-eminent pediatric hospital in the region.

9.3     Defendant's unfair and deceptive acts and practices affect the public interest.

9.4     The unfair and deceptive acts and practices were committed in the general course of Defendant's business in Washington and have already injured and resulted in the death of

CLASS ACTION COMPLAINT - 22

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

1  numerous Washington residents and others.

2  9.5     As a direct and proximate cause of Defendant's unfair and deceptive acts and practices,

3  Plaintiffs and the Class have been injured in their business and/or property and are entitled to

4  recover compensatory damages as described below.

5  9.6     Plaintiffs and each of the Class members are entitled to recover treble damages,

6  attorneys' fees, and costs pursuant to RCW 19.86.090.

7  ## X.     DAMAGES

8  10.1     Defendant's failure to exercise such skill, care and learning, and failure to exercise

9  reasonable prudence, was a direct and proximate cause of the injuries and damages to Plaintiffs

10  and each Class member.

11  10.2     Defendant's negligence caused Plaintiffs' and each Class member's infection by

12  *Aspergillus* and all related harms, including treatment and monitoring, then and into the future.

13  10.3     As a direct and proximate result of Defendant's negligence, Plaintiffs and each Class

14  member has suffered past and future physical and emotional harm, pain and suffering, loss of

15  enjoyment of life, lost earning potential, disability, and related medical expenses.

16  10.4     As a direct and proximate result of Defendant's negligence, Plaintiff parents suffered loss

17  of consortium, and special damages.

18  ## XI.     STATUTORY ELECTION

19  11.1     Neither Plaintiffs nor any Class member elect to submit this dispute to arbitration

20  pursuant to RCW 7.70A.020, and a declaration by their attorney is attached.

21  ## XII.     WAIVER OF PRIVILEGE

22  12.1     Waiver of the physician-patient privilege under RCW 5.60.060(4)(b)  does not waive or

23  release any other rights or privileges, including those related to the physician-patient

24

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

relationship,  other than the privilege set out in the above-cited statute.

### XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant in their favor and in favor of the Class and against Defendant, as follows:

12. 1    Declaring and decreeing that this action is properly maintainable as a Class action pursuant to CR 23(b)(3).

12. 2    Declaring and decreeing that Defendant violated WAC 246-320.

12. 3    Declaring and decreeing that Defendant was negligent for introducing the *Aspergillus* mold into what should have been its sterile premises.

12. 4    Declaring and decreeing that Defendant's negligence resulted in injury to Plaintiff and each Class member.

12. 5    For special and general damages to Plaintiffs and the Class in amounts to be proven at trial.

12. 6    For costs and disbursements.

12. 7    For statutory attorney fees.

12. 8    If Defendant brings any frivolous or unfounded defenses, for attorneys' fees and costs pursuant to RCW 4.84.185 and/or Rule 11 of the Superior Court Civil Rules.

12. 9    For statutory interest on the judgment from the date judgment is entered until paid in full.

12. 10   For prejudgment interest on the special damages.

12. 11   For prejudgment interest on liquidated damages.

12. 12   For treble damages, attorneys fees and costs under the CPA.

//        //

//        //

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

For such other and further relief as the Court may deem just and equitable.

**DATED** this 2nd day of December, 2019.

                                        **STRITMATTER KESSLER**
                                        **KOEHLER MOORE**


                                        /s/ Karen K. Koehler
                                        Karen K. Koehler, WSBA#15325
                                        Brad J. Moore, WSBA#21802
                                        Counsel for Plaintiffs and Class


                                        **LAYMAN LAW FIRM**


                                        /s/ John R. Layman
                                        John R. Layman, WSBA#13823
                                        Co-counsel for Plaintiffs and Class

CLASS ACTION COMPLAINT - 25