# EXHIBIT I

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| Kathleen Garvin as guardian *ad litem* for J.C., a minor child,<br><br>Plaintiff,<br><br>v.<br><br>SEATTLE CHILDREN'S HOSPITAL, a non-profit Washington corporation,<br><br>Defendant. | No.<br><br>**COMPLAINT FOR DAMAGES** |

J.C., by and through his guardian *ad litem*, alleges as follows:

## I.   PARTIES

1.1.   J.C. is a minor child who is a resident of King County, Washington. J.C. was 11 years old and immune-competent when he underwent a non-emergency neurosurgery at Defendant Seattle Children's Hospital in March 2019. During the surgery he was exposed to and infected with Aspergillus mold, which was present in the operating room.

1.2.   Kathleen Garvin is a lawyer licensed to practice in Washington State and is the appointed guardian *ad litem* for J.C.

1.3.   Defendant Seattle Children's Hospital ("SCH") is a nonprofit corporation organized under the laws of the State of Washington and authorized to do business in the State

COMPLAINT FOR DAMAGES
PAGE- 1

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

of Washington. Defendant is a "health care provider" within the meaning of RCW 7.70.020(3) and was at all relevant times duly authorized to provide medical care, treatment, and services to J.C.

1.4. At all relevant times, Defendant was acting independently and by and through its agents and employees, who were acting within the scope and course of their employment.

## II.     JURISDICTION AND VENUE

2.1 The Court has jurisdiction over the subject matter of this lawsuit pursuant to RCW 2.08.010.

2.2 Venue is proper in this Court under RCW 4.12.020 because Defendant SCH is located in King County and the events giving rise to this action occurred in King County.

## III.    FACTUAL ALLEGATIONS

3.1 Aspergillus is a genus of mold fungus that can cause a wide spectrum of illnesses, some life-threatening. Aspergillus is known to be found in hospital equipment and air-filtration systems, through which it can infect unsuspecting patients.

3.2 SCH has a long history of Aspergillus mold contamination in its operating rooms. According to its Chief Executive Officer, 14 pediatric patients have been infected with Aspergillus mold as a result of surgical procedures at SCH since 2001. Also according to the Chief Executive Officer of SCH, six of those 14 children died as a result of the fungal infections.

3.3 Between January 2004 and May 2005, three pediatric patients developed Aspergillus infections after undergoing cardiac surgery at SCH. In 2005 one of those patients, through a guardian *ad litem,* and her parents filed a lawsuit, *Dussault v. Seattle Children's Hospital and Regional Medical Center,* Case No. 05-2-36911-6 (King County). They asserted that SCH's air-filtration system allowed Aspergillus to enter the operating room, contrary to SCH's then-existing Infection Disease Policies and Procedures Manual. The plaintiffs further

COMPLAINT FOR DAMAGES
PAGE- 2

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

asserted that, again contrary to SCH's own policies, the hospital failed to take routine air samples in the operating rooms and did not act on air sample testing showing higher levels of Aspergillus spores inside the facility than outside.

3.4     Until November 2019, SCH claimed publicly that a liquid nitrogen tank contaminated with Aspergillus that was kept near an operating room could have been a source of the 2004-2005 Aspergillus infections at SCH.

3.5     On November 20, 2017, an anonymous SCH employee submitted a whistleblower complaint to the Washington Department of Health ("DOH") to report an "unsafe facility condition." The whistleblower reported that SCH had contracted a company to fix leaks in a SCH building, that the company had to seal the areas due to mold, and that "[t]here is a potential the mold is in the HVAC system" at SCH.

3.6     In the summer of 2018 SCH reported to the DOH that three post-surgical patients had tested positive for Aspergillosis, the infection caused by Aspergillus exposure.

3.7     In January and February 2019, J.C. sought treatment at SCH for scoliosis and syringomyelia associated with a not-uncommon malformation at the base of his skull. His surgeon recommended he undergo a decompression surgery to relieve pressure on his spinal cord and the base of his skull. J.C. did not have a condition that compromised his immune system. In other words, he was "immune competent."

3.8     No one at SCH at any time informed J.C. or his parents that SCH knew of at least 11 pediatric surgical patients who had been infected with Aspergillus mold in SCH operating rooms, and that six of those patients had died as a result of those exposures.

3.9     J.C.'s condition was not emergent. His surgeon has privileges at other Seattle hospitals, where the procedure could have been performed.

3.10    On March 19, 2019, J.C. underwent Chiari decompression surgery at SCH.

COMPLAINT FOR DAMAGES
PAGE- 3

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

3.11     Within a week of his discharge, J.C. began to experience persistent meningitic symptoms, including excruciating headaches, neck pain and decreased neck mobility, and sensitivity to loud noises.  J.C. was mostly bedridden for three weeks after his discharge.  In the following weeks, J.C.'s symptoms worsened.

3.12     Throughout this time J.C.'s parents were in repeated contact with SCH regarding J.C.'s symptoms because of their severity and because they did not seem consistent with a normal recovery for his surgery.

3.13     On information and belief, SCH discovered the presence of Aspergillus mold spores in several of its operating rooms during the week of May 13, 2019.

3.14     SCH closed several operating rooms on or about May 18, 2019, as a result of the Aspergillus mold outbreak.

3.15     On May 20, 2019, SCH notified the Washington State Department of Health that SCH had again discovered Aspergillus mold in several of its operating rooms.  It made the disclosure to the State at this time because of a concern that information about the presence of Aspergillus had been leaked to the news media.  SCH did not notify the U.S. Centers for Disease Control of the 2019 outbreak, even though the CDC has high-level expertise in controlling mold in health care facilities and even though the CDC had provided SCH expert guidance following the 2018 Aspergillus outbreak.  The CDC only learned of the 2019 mold outbreak after seeing a story on CNN.

3.16     On May 21, 2019, a number of news stories appeared in the media concerning the Aspergillus exposures at SCH and the closure of some operating rooms.

3.17     J.C. continued to seek treatment and care at SCH for his worsening symptoms. On May 22, 2019, physicians at SCH ordered an MRI of J.C.'s brain and spine, which had a finding consistent with arachnoiditis inflammation, a progressive neuroinflammatory disease

COMPLAINT FOR DAMAGES
PAGE- 4

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

that causes nerve roots to stick together or "clump" and adhere to the arachnoid lining.

3.18   On May 24, 2019, at 5:12pm, J.C. was admitted to the emergency department at SCH for a lumbar procedure. In light of J.C.'s symptoms, physicians at SCH recommended J.C. be evaluated for "potential aspergillosis due to known OR contamination." Aspergillus testing was ordered, but SCH providers told J.C. and his parents that it was unlikely he had an Aspergillus infection.

3.19   The lab results came back on May 24, 2019 at 8:55 p.m. showing J.C. tested positive for Aspergillus.

3.20   Physicians at SCH allowed J.C. to be discharged at 10:42 pm on May 24, 2019, without notifying J.C. of his positive Aspergillus test results.

3.21   At 11:43 pm on May 24, 2019, SCH authorized the implementation of the "Aspergillus Clinical Support Guidelines," including the Aspergillus Exposure Prophylaxis Guideline and lab monitoring galactomannan testing.

3.22   On May 24, 2019, SCH closed 10 additional operating rooms due to the Aspergillus outbreak. SCH's operating rooms remained closed until July 4, 2019.

3.23   On May 25, 2019, approximately 12 hours after J.C. and his parents left the SCH emergency department, SCH notified them that J.C. needed to return to the hospital due to positive Aspergillus test results. Later that day, J.C. was diagnosed with "CNS [central nervous system] aspergillosis from OR contamination" and readmitted to SCH for extended treatment for the infection.

3.24   J.C. remained hospitalized at SCH for four weeks while he underwent daily infusions using potent and toxic antifungal medications, close monitoring of his kidneys and other systems, which can be damaged as a side effect of the anti-fungal medication, and treatment for the excruciating headache and back pain he was experiencing as a result of the

COMPLAINT FOR DAMAGES
PAGE- 5

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

inflammatory condition in his spine.  This inflammatory condition was a direct result of the systemic fungal infection, which went undiagnosed and untreated for weeks.  J.C. was discharged from SCH on June 23, 2019, but continued treatment as an outpatient for several weeks thereafter requiring lengthy daily trips to SCH for infusions.

3.25	He was prescribed multiple medications as part of his continuing treatment.  Notwithstanding these medications, J.C. continues to struggle with severe pain in his head, neck, lower back, and legs. J.C. also experiences stomach pain, nausea, vomiting, and decreased appetite.

3.26	J.C. is scheduled to continue treatment by oral administration of voriconazole, through May, 2020, if the side effects –including liver damage, hair loss, visual disturbances, and bone disease –do not become intolerable.  He is at elevated risk of a recurrence of infection from exposure to Aspergillus.

3.27	As a result of the Aspergillosis and arachnoiditis, J.C. is in constant pain and suffers from deconditioning; decreased strength, range of motion, muscle length, functional mobility and endurance; chronic pain in the back and lower extremities; impaired gait and balance; and generalized weakness.

3.28	J.C. is severely limited in his ability to remain seated for a full class period, let alone a full school day.  He requires extensive physical therapy.

3.29	After closing its operating rooms in May 2019, SCH conducted an investigation into the source of the Aspergillus outbreak.  It has shielded the details of that investigation from public disclosure, suing KING-5 to prevent it from obtaining documents about its investigation from the King County Health District.

3.30	SCH has now acknowledged that since 2001, 14 surgical patients have been infected with Aspergillus through exposure in its operating rooms.  Three of those patients were

COMPLAINT FOR DAMAGES
PAGE- 6

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

infected in 2018 and three, including J.C., were infected in 2019. Six of those patients have died from their infections, including one who was infected in 2018.

3.31  In November 2019, SCH announced that it now attributed the Aspergillus outbreaks in its operating rooms to problems with its HVAC air-filtration system. SCH concluded that the 2018 infections were likely a result of small gaps in the walls of two operating rooms at SCH. SCH concluded that the 2019 infections were likely caused by a gap in the air filters used at SCH.

3.32  In 2019, the Washington State DOH and federal Centers for Medicare and Medicaid Services ("CMS") found SCH deficient in effectively overseeing its quality improvement and infection control, thereby putting patients at risk of harm from pathogenic organisms. Specifically, the DOH and CMS investigation concluded that, between July 2018 and April 2019, SCH failed to complete routine maintenance on exhaust fans or to regularly replace pre-filters on air-filtration systems.

3.33  On November 11, 2019, SCH announced that it had closed three operating rooms and two procedural areas after Aspergillus was once again discovered. At least one new patient was reported to have been infected with Aspergillus shortly after SCH's November 11, 2019 announcement.

3.34  Ten operating rooms at SCH are currently scheduled to remain closed until January 2020 while the hospital installs HEPA filters.

### IV.  FIRST CAUSE OF ACTION: PREMISES LIABILITY

4.1  Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1.1 through 3.36 of this Complaint.

4.2  J.C. was an invitee on Defendant's premises when he entered SCH for the purpose of obtaining medical care on or about March 19, 2019, and every date thereafter.

COMPLAINT FOR DAMAGES
PAGE- 7

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

4.3     Defendant had a special relationship with J.C. as an invitee on its premises.

4.4     Defendant owed a duty to J.C. to maintain its premises in a reasonably safe condition and to discover any dangerous conditions on Defendant's premises.

4.5     Defendant knew about, or by the exercise of reasonable care should have known about or discovered, the presence of Aspergillus mold in its operating rooms.  Defendant was aware as early as 2004 or 2005 that contaminated hospital equipment and air-filtration systems could cause patients at SCH to become infected with Aspergillus.  Prior to J.C.'s March 19, 2019 surgery, Defendant knew as recently as August 2018 that Aspergillus was present on its premises after three post-surgical patients tested positive for Aspergillosis.

4.6     Despite knowing, or having reason to know of, the risk that patients at SCH could be infected with Aspergillus through hospital equipment and SCH's air-filtration systems, Defendant failed to install an appropriate air filtration system, to perform reasonable monitoring of its premises for the presence of mold, or to perform reasonable maintenance on or inspection of its equipment and air-filtration systems to keep its premises free from Aspergillus.

4.7     Defendant breached its duty owed to J.C. by, among other things, failing to install an appropriate air filtration system, to perform reasonable monitoring of its premises for the presence of mold, or to perform reasonable maintenance on or inspection of its equipment and its air-filtration systems; failing to keep its operating rooms free from Aspergillus mold; and from failing to discover the presence of Aspergillus in its operating rooms.

4.8     Defendant's acts and omissions were a proximate cause of the injuries to J.C.

**V. SECOND CAUSE OF ACTION: CORPORATE NEGLIGENCE**

5.1     Plaintiff realleges and incorporate by reference the allegations set forth in paragraphs 1.1 through 4.8 of this Complaint.

5.2     Defendant SCH, as a hospital, owed a non-delegable duty directly to J.C. to

COMPLAINT FOR DAMAGES
PAGE- 8

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

ensure his safety and welfare while J.C. remained within Defendant's confines.

5.3   Defendant breached its duty to J.C. by failing to use reasonable care in the maintenance of its grounds and facilities.  Among other things, Defendant breached its duty to J.C. by failing to install an appropriate air filtration system, to perform reasonable monitoring of its premises for the presence of mold, or to perform reasonable maintenance on or inspection of its equipment and its air-filtration systems; failing to keep its operating rooms free from Aspergillus mold; and from failing to discover the presence of Aspergillus in its operating rooms.

5.4   Defendant's acts and omissions were a proximate cause of the injuries to J.C.

## VI. THIRD CAUSE OF ACTION: MEDICAL NEGLIGENCE (CH. 7.70 RCW)

6.1   Plaintiff realleges and incorporate by reference the allegations set forth in paragraphs 1.1 through 5.4 of this Complaint.

6.2   As a "health care provider" under 7.70 RCW, Defendant SCH and its agents/employees owed J.C. a duty to comply with the accepted standard of care in treating its patients, including J.C.

6.3   Defendant SCH and its agents/employees failed to exercise the degree of care, skill, and learning expected of a reasonably prudent health care provider similarly situated when J.C. sought treatment at SCH beginning in March 2019.  Specifically, Defendant breached the standard of care when, among other things, it failed to prevent an infestation of Aspergillus mold in its operating rooms; failed to detect the presence of Aspergillus mold in its operating rooms; allowed J.C. to undergo neurosurgery in an operating room contaminated with Aspergillus mold on or about March 19, 2019, during which time J.C. was infected with Aspergillosis; and failed to timely diagnose or treat the fungal infection due to J.C.'s exposure to Aspergillus mold spores in the operating room on March 19, 2019.

COMPLAINT FOR DAMAGES
PAGE- 9

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

6.4     Defendant's acts and omissions were a proximate cause of the injuries to J.C. As a direct result of Defendant's breach of the standard of care, J.C. was infected with Aspergillosis. The Aspergillosis caused J.C. to develop arachnoiditis, a debilitating and progressive condition that J.C. will suffer from for the rest of his life and that will likely worsen over time.

### VII. Fourth Cause of Action: Res Ipsa Loquitor

7.1     Plaintiff realleges and incorporate by reference the allegations set forth in paragraphs 1.1 through 6.4 of this Complaint.

7.2     J.C.'s exposure to and infection with Aspergillus mold at SCH would not ordinarily happen in the absence of negligence.

7.3     SCH had exclusive control over its premises, including its systems and operating rooms in which J.C. was exposed and infected, and which has caused J.C.'s injuries.

7.4     J.C. did not contribute to his exposure and infection with Aspergillus mold at SCH.

### VIII.   No Consent to Arbitration

8.1     Plaintiff as guardian *ad litem* for J.C. does not elect to submit this dispute to arbitration pursuant to RCW 7.70A.020.

### IX.   No Consent to Joining Class Action

9.1     J.C., by and through his guardian ad litem, does not consent to being a part of any class action or having his case consolidated with any other action being brought as a class action.

### PRAYER FOR RELIEF

Based on the foregoing, Plaintiff respectfully requests the following relief:

A.     For judgment against Defendant for premises liability, corporate negligence, and

COMPLAINT FOR DAMAGES
PAGE- 10

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

medical negligence;

B. For judgment against Defendant for all general and special damages allowable by law, including without limitation damages for past and future pain, suffering, disability, loss of enjoyment of life, disfigurement, emotional distress, medical and other expenses, and impaired earning capacity, all in amounts to be proven at the time of trial;

C. For an award of attorneys' fees and costs, as permitted by law or equity; and

D. For such other relief as the Court may deem just and appropriate.

DATED this 2nd day of December, 2019.

CORRIE YACKULIC LAW FIRM, PLLC

*/s/ Corrie J. Yackulic*
Corrie J. Yackulic, WSBA No. 16063
110 Prefontaine Place So., #304
Seattle, WA 98104
Telephone (206) 787-1915
corrie@cjylaw.com

CORR CRONIN LLP

*/s/ Emily Harris*
Emily Harris, WSBA No. 35763
Victoria E. Ainsworth, WSBA No. 49677
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154-1051
Telephone (206) 625-8600
eharris@corrcronin.com
tainsworth@corrcronin.com

*Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES
PAGE- 11

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725